UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION

| | |
|---|---|
| PHILLIP HILL,<br>　*Plaintiff*, | §<br>§<br>§ |
| v. | § No.4:23-cv-01140-Y |
| | § |
| TARRANT COUNTY, TEXAS, and<br>CHRIS SALONE<br>　*Defendants*. | §<br>§<br>§<br>§ |

**PLAINTIFF'S RESPONSE TO
TARRANT COUNTY'S 12(b)(6) MOTION TO DISMISS**

Comes now, Deputy Phillip Hill, Plaintiff, ("Hill" or "Plaintiff") to file this Response to Tarrant County's Motion to Dismiss, for its mistreatment following his complaint that the County's resources were being used to benefit favored bond agents, a practice that is both reprehensible and against county policy.

Concurrent with this Response, Plaintiff has filed his First Amended Complaint, which now directly references section 39.02 of the Texas Penal Code, which Defendant Salone was violating, with the apparent approval of Tarrant County, which is apparently led by management that cares more about protecting its reputation by trying to dismiss this case than in stopping the obvious, illegal, and reprehensible practice of knowingly allowing its agents to treat county employees as mere tools for favored bond agents.

Plaintiff's First Amended Complaint abandons the "class of one" argument, which is not defended in this Response.

## TABLE OF CONTENTS

I. Federal Rule of Procedure 12(b)(6) Pleading Standard. ...........................................................4

II. Hill has pleaded facts sufficient to justify his First Amendment Claim. .................................5

III. Hill's 1983 claim is sufficient to render Tarrant liable under Monell. ...................................12

IV. Hill has successfully pleaded a Whistleblower Act claim against Tarrant. ............................14

PRAYER.......................................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*., Camp v. Corr. Med. Servs.*, 400 Fed. Appx. 519, 522 & n.2 (11th Cir. 2010) ............................ 7
*., Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) ................................................................... 5
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...................................................................... 3, 4
*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) .................................................................. 3
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................................ 3
*Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1206 (10th Cir. 2007) ....... 5, 6, 9
*Branti v. Finkel*, 445 U.S. 507, 515–17 (1980) ................................................................... 4, 9
*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ....................................................... 12
*Connick v. Myers*, 461 U.S. 138, 147–48 (1983) ................................................................ 6, 9
*Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) ........................................... 6, 7, 8, 10
*Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) ........................................................... 8
*Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) .......................................................... 6, 7, 10
*Harmon v. Dallas Cty.*, 927 F.3d 884, 893 (5th Cir. 2019) ...................................................... 4
*Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) .......................... 3
*Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001) ................................................ 5, 9
*Lane v. Franks*, 573 U.S. 228, 238 (2014) ....................................................................... 8, 11
*Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) .................................. 11
*Morgan v. Hubert*, 335 F. App'; 466, 470 (5th Cir. 2009) ...................................................... 3
*Near v. Minnesota*, 283 U.S. 697, 707 (1931) ..................................................................... 4
*Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) ..................................................... 4, 5, 6, 9
*Porter v. Califano*, 592 F.2d 770, 773–74 (5th Cir. 1979) ................................................. 8, 11
*Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988) ........................................ 7, 10
*Trigillo v. Snyder*, 547 F.3d 826, 829 (7th Cir. 2008) .................................................... 7, 8, 10
*Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) .......................................................... 3
*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ............................................. 11
*Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) ........................ 4, 10, 11

**Statutes**

Texas Penal Code § 39.02 ................................................................................................ 13
Texas Penal Code § 39.02(a)(2) ........................................................................................ 13

**Rules**

FED. R. CIV. PRO. 12(b)(6) ................................................................................................. 3
FED. R. CIV. PRO. 8(a)(2) ................................................................................................... 3

**Constitutional Provisions**

U.S. Const. amend. I. ........................................................................................................ 4

## I.    Federal Rule of Procedure 12(b)(6) Pleading Standard.

1.     A motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) is viewed with disfavor and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. Rule 8(a)(2) requires that each claim in a complaint include a short and plain statement showing that the pleader is entitled to relief. *Id.* The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

2.     In considering a motion to dismiss pursuant to Rule 12(b)(6) the Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3.     In *Iqbal*, the Supreme Court established a two-step approach for assessing complaints in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App.; 466, 470 (5th Cir. 2009). This evaluation will "be a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. Hill has pleaded facts sufficient to justify his First Amendment Claim.

4. Tarrant County alleges that Hill has failed to state a claim for retaliation under the First Amendment because a) he has not shown that he spoke as a citizen on a matter of public concern, b) as a public employee he spoke in furtherance of the duties of his employment. Tarrant County relies on *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (speech "is not protected by the First Amendment so long as it was made pursuant to the worker's official duties."); and *Harmon v. Dallas Cty.*, 927 F.3d 884, 893 (5th Cir. 2019) (a government employee plaintiff must speak as a citizen on a matter of public concern to warrant First Amendment protection.). ECF 3 p. 3-4.

5. All parties can agree that the Constitution's First Amendment prevents the government from "abridging the freedom of speech." U.S. CONST. amend. I. *Near v. Minnesota*, 283 U.S. 697, 707 (1931). While the First Amendment specifically prohibits "Congress" from abridging speech, the First Amendment was incorporated against the states by the Fourteenth Amendment.

6. A series of Supreme Court cases have recognized that in certain circumstances, the Free Speech Clause may prohibit the government from retaliating against public employees because of their speech or political affiliation. *See, e.g., Branti v. Finkel*, 445 U.S. 507, 515–17 (1980) (holding that the First Amendment generally prohibits the dismissal of a public employee based on his speech or beliefs).

7. Specifically, under *Pickering v. Board of Education*, public employees are protected when they speak as citizens on matters of public concern, and when the employee's and the public's

interest in that speech outweighs the government's interest as an employer. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

8. Accordingly, Pickering may protect public employees against retaliation when they speak about government misconduct, providing recourse for some whistleblowers. *See, e.g., Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1206 (10th Cir. 2007) ("Speech concerning potential illegal conduct by government officials is inherently a matter of public concern."); *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001) ("[A]n employer who discharges an employee in retaliation for legitimate whistleblowing does so in violation of the employee's clearly established First Amendment rights.").

9. The Supreme Court has recognized that the government has an interest in regulating "employees' words and actions" as necessary to provide public services efficiently. *E.g., Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) ("When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom. Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." (citation omitted)).

10. When employees speak in the course of their official duties, they are generally speaking on behalf of the government, and the government can accordingly control their speech. *See id.* at 421–22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.").

11.     However, in *Pickering v. Board of Education*, the Supreme Court emphasized that when public employees speak as citizens, they do not completely "relinquish the First Amendment rights they would otherwise enjoy" to discuss public issues, including matters related to the offices where they work. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

12.     The Court said in *Pickering* that to analyze the constitutionality of a restriction on an employee's speech, a reviewing court should balance the interests of the employee, "as a citizen, in commenting upon matters of public concern," against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*

13.     Before applying the Pickering balancing test, a court must evaluate whether the employee spoke as a citizen, on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006). Employees speak as employees rather than as citizens if the speech is made "pursuant to their official duties." *Id*. at 421. Whether "speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

14.     If the speech fails either of these two initial inquiries, and the employee instead spoke "as an employee upon matters only of personal interest," then *Pickering* does not apply, and the government may discipline its employee without violating the First Amendment. *Id.* at 147.

15.     Thus, although "[s]peech concerning potential illegal conduct by government officials" is likely to be considered "a matter of public concern," such speech will only be constitutionally protected so long as the employee was also speaking as a citizen. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1206 (10th Cir. 2007); *see also, e.g., Connick*, 461 U.S. at 148 (suggesting "actual or potential wrongdoing or breach of public trust" would involve a matter of public concern); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc) ("Dahlia's

speech—reporting police abuse and the attempts to suppress its disclosure—is quintessentially a matter of public concern."); *Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988) ("[S]peech disclosing public corruption is a matter of public interest and therefore deserves constitutional protection.").

16. Applying these threshold tests in the specific context of whistleblowers, First Amendment protection depends in part on whether they reported misconduct outside of their ordinary job duties, and whether overseeing others or investigating misconduct is part of their ordinary job responsibilities. *See, e.g., Dahlia*, 735 F.3d at 1077–78.

17. This is a "practical" inquiry, looking "to the duties an employee actually is expected to perform." *Garcetti*, 547 U.S. at 424–25. Accordingly, the Supreme Court has said an employee's formal job description may not be dispositive, and speech may be protected even if it was made at the office or involved the subject matter of employment. *Id*. at 420–21, 424.

18. Even if a generally applicable law requires public employees to report misconduct, such a law will not necessarily create a job duty unless it specifically imposes a reporting duty on the particular employee. *See, e.g., Camp v. Corr. Med. Servs.*, 400 Fed. Appx. 519, 522 & n.2 (11th Cir. 2010); *Dahlia*, 735 F.3d at 1075; *see also Trigillo v. Snyder*, 547 F.3d 826, 829 (7th Cir. 2008) (holding that while a statute could "help determine the scope of an employee's duties to the extent that it creates responsibilities for that employee's specific job," a state statute requiring certain employees to report anticompetitive practices did not include the employee's position in the list, and a "broadly applicable legal duty" stemming from the fact that she was a state employee did not define her specific job duties).

19. However, if employees are in "Internal Affairs" or "watchdog" positions, or otherwise tasked with ensuring legal compliance, reporting government misconduct may be part of their job

duties and unprotected by the First Amendment. *Dahlia*, 735 F.3d at 1075. *See, e.g., Trigillo*, 547 F.3d at 830 ("As the manager of procurement, it was Trigillo's job to ensure that the many transactions that went through the department were properly bid and otherwise met the requirements of the Illinois Procurement Code and other applicable laws. . . . Because the report was a means to fulfill Trigillo's obligation to oversee the department's procurement transactions, it is not protected by the First Amendment.").

20. In addition, if employees report concerns up the chain of command rather than reporting to an outside party, they may be more likely to be speaking pursuant to their job duties. *See, e.g., Dahlia*, 735 F.3d at 107; *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).

21. The Supreme Court held that a community college employee's testimony about government misconduct was protected speech, where the testimony was "outside the scope of his ordinary job duties." *Lane v. Franks*, 573 U.S. 228, 238 (2014).

22. If employees are speaking as a citizen on a matter of public concern, and their speech is therefore protected, the court will then proceed to apply the Pickering balancing test to determine whether the government's action was justified by its needs as an employer in efficiently providing public services. *Id.* at 242.

23. In a case involving "good-faith" whistleblower speech, the Fifth Circuit has conclusively determined that the Pickering balancing test will more frequently weigh in favor of the employee because "[e]mployers cannot be said to have a legitimate interest in silencing reports of corruption or potential illegality." *Porter v. Califano*, 592 F.2d 770, 773–74 (5th Cir. 1979) ("[I]t would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office. . . .

[T]he balancing test articulated in Pickering is truly a balancing test, with office disruption or breached confidences being only weights on the scales.").

24. As a threshold matter, there is no doubt that Hill was retaliated against for his speech criticizing the TCSO practice whereby warrant officers prioritize tips from favored bond agents. ECF 7, para. 10. This practice allows private industry to dictate the use of County law enforcement resources and prioritize apprehension of suspects who have skipped bale over more dangerous suspects who have not.

25. Transferring Hill after he spoke out is textbook retaliation as outlined in *Branti v. Finkel*, 445 U.S. 507, 515–17 (1980).

26. The question concerns whether Hill's speech falls within the ambit of citizen speech on matters of public concern under *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Hill's speech concerned a practice by Tarrant County deputies that misallocates law enforcement resources for corrupt ends. The "content, form, and context of the speech, as revealed by the whole record," shows that Hill was attempting to notify Tarrant County that a practice it tolerated among warrant officers was putting public safety at risk, in conformity with the Supreme Court's analysis in *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

27. Multiple federal circuit courts have found that speech of this nature is protected, including those noted *supra* like *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1206 (10th Cir. 2007) ("Speech concerning potential illegal conduct by government officials is inherently a matter of public concern."); *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001) ("[A]n employer who discharges an employee in retaliation for legitimate whistleblowing does so in violation of the employee's clearly established First Amendment rights."). *Connick*, 461 U.S. at 148 (suggesting "actual or potential wrongdoing or breach of public trust" would involve a matter

of public concern); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc) ("Dahlia's speech—reporting police abuse and the attempts to suppress its disclosure—is quintessentially a matter of public concern."); *Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988) ("[S]peech disclosing public corruption is a matter of public interest and therefore deserves constitutional protection.").

28. The "practical" inquiry, looking "to the duties an employee actually is expected to perform." *Garcetti*, 547 U.S. at 424–25. An employee's formal job description may not be dispositive, and speech may be protected even if it was made at the office or involved the subject matter of employment. *Id*. at 420–21, 424. It is important to recognize that overseeing or investigating misconduct is not part of Hill's ordinary job responsibilities as a warrant officer, seriously militating in favor of the notion that his speech was made as a citizen rather than in his capacity as an employee of Tarrant County. *See, e.g., Dahlia*, 735 F.3d at 1077–78.

29. Furthermore, Hill is not in "internal Affairs" or a "watchdog" position, a procurement manager, or otherwise tasked with ensuring legal compliance such that reporting government misconduct is part of his job and unprotected. *Dahlia*, 735 F.3d at 1075. *See, e.g., Trigillo*, 547 F.3d at 830.

30. Tarrant's reliance on *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) is particularly misplaced. In *Williams,* the Fifth Circuit declined to protect speech made by a school athletic director who complained about misuse of school funds in the athletic program and suffered employment related retaliation.

31. Unlike the facts at bar, the plaintiff in *Williams* clearly spoke in the course of his official duties because he had supervisory responsibilities over the athletic program as its director, unlike Hill who has no such responsibility and was an officer in the warrant division, not its director.

32.  Further, *Williams* antedates the Supreme Court's seminal holding in *Lane v. Franks*, 573 U.S. 228, 238 (2014), where the court found that a community college employee's testimony about government misconduct was protected speech because the testimony was "outside the scope of his ordinary job duties." *Id.* In *Lane* a community college administrator was fired after testifying under oath about corruption within the college. The court noted,

> It bears emphasis that our precedents dating back to Pickering have recognized that speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment. . . .Accordingly, it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal." Most recently, in *San Diego v. Roe*, 543 U. S., at 80, the Court again observed that public employees "are uniquely qualified to comment" on "matters concerning government policies that are of interest to the public at large."  The importance of public employee speech is especially evident in the context of this case: a public corruption scandal.

*Id.* at 240. Given that Hill was speaking on a public concern, the question is whether the County's action was justified by its needs as an employer to efficiently provide public services. *Lane* at 242.

33.  The Fifth Circuit precedent at this stage of the analysis is clear because it has concluded that in cases involving "good-faith" whistleblowing the *Pickering* balancing test will more frequently weigh in favor of the employee. *Porter v. Califano*, 592 F.2d 770, 773–74 (5th Cir. 1979). Here, Hill clearly acted in good faith by reporting the conflict of interest and misallocation of resources for financial gain. ECF 7, para. 18.

### III.  Hill's 1983 claim is sufficient to render Tarrant liable under *Monell*.

34.  At Motion page 5, Tarrant relies on the Supreme Court's current interpretation of 42 U.S.C. §1983 that municipal defendants are not subject to respondeat superior liability for their officers' constitutional torts. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989); *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978).

35.  Instead, cities may be held liable for the constitutional torts of their officers only when the plaintiff can show that the city is responsible for those torts under the doctrine of municipal

liability, which requires connecting the violation of the plaintiff's rights to a municipal policy or custom. *Monell* at 694-95.

36.  In *Monell v. Department of Social Services*, the Court held that municipal government entities can be held liable for the constitutional torts committed by their officials. *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 700-01 (1978). The Court limited its holding, however, and refrained from imposing blanket respondeat superior liability on cities for their officers' constitutional torts. *Id.* at 695. Instead, the Court required that the violation by the individual officer be tied to a "policy" or "custom" of a municipal government entity. *Id.* at 694.

37.  The fundamental underpinning of *Monell* was that municipal defendants should only be held liable when they themselves were causally responsible and at fault for the constitutional violation committed by their individual officers. This type of liability has been called and is sometimes referred to as "Monell liability" or liability under the "Monell doctrine." Later cases also made clear that a municipal defendant cannot be liable unless some individual officer is found to have violated the Constitution; that is, there is no such thing as a violation for which a city can be held responsible that is not attributable to the actions of some individual officer. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (local government cannot be held liable if the plaintiff has "suffered no constitutional injury at the hands of the individual police officer").

38.  In the facts at bar, all of the elements of liability under *Monell* have been met. Here, Salone and other deputies are acting in accordance with the department's custom to allow deputies to prioritize tips from bond agents over other tips. This "policy or custom" is the moving force that resulted in the violation of Plaintiff's constitutional rights via a determination that he was insubordinate for objecting to a corrupt preferential allocation of law enforcement resources that

jeopardizes public safety. Absent Tarrant's custom of allowing law enforcement to prioritize bond agent tips, Plaintiff's constitutional rights never would have been violated.

### IV.     Hill has successfully pleaded a Whistleblower Act claim against Tarrant.

39.     Defendants seek dismissal of Plaintiff's claim under the Texas Whistleblower Act, arguing that Salone's misuse of county personnel does not rise to the level of violating state law, and thus escapes this Court's review.

40.     In the First Amended Complaint, filed concurrently, Plaintiff has added allegations that Salone's actions violate Texas Penal Code § 39.02, titled "Abuse of Official Capacity", which prohibits the misuse of county personnel for personal benefit.

41.     Plaintiff notes that while outright bribery may not be immediately in evidence, a violation of section 39.02 does not require a quid pro pro, but only actions which are a misuse of government resources (in this case, services and personnel) under Salone's control by virtue of his position. Tex. Pen. Code § 39.02(a)(2).

42.     To use county personnel to benefit a favored bondsman in a way that is contrary to department policy is clearly a misuse of government resources, and to demote or otherwise mistreat a government employee for pointing out the failure of leadership and abuse of position certainly qualifies as an action protected by the Texas Whistleblower Act.

### PRAYER

WHEREFORE Plaintiff respectfully prays that the Tarrant's motion to dismiss be denied and seeks all other relief to which Plaintiff may be justly entitled in both law and equity.

Respectfully submitted,

Norred Law, PLLC
/s/ *Warren V. Norred*
Warren V. Norred, Texas Bar Number 24045094, warren@norredlaw.com
515 E. Border St., Arlington, Texas 76010
P. 817-704-3984
*Attorney for Plaintiff*


Certificate of Service – I certify that I served this amended complaint on December 14, 2023, to defendants through their counsel of record. - /s/Warren V. Norred